IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01259-MSK-PAC

PATRICK WOBST,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, an Illinois corporation,

    Defendant and Counter Claimant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on the parties' cross-motions **(#62, 65)** for summary judgment.[1] Having considered the motions, responses **(#69, #70)**, replies **(#74, #75)**, supporting briefs **(#63, #66, #71)**, supplemental authorities **(#76, #77, #78, #100, #101)** and the documentary evidence submitted by the parties, the Court finds and concludes as follows.

### I. Jurisdiction

For purposes of determining the pending motions, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### II. Issue Presented

The Plaintiff, Patrick Wobst, asserts claims against the Defendant, Allstate Insurance Company. Mr. Wobst claims entitlement to enhanced personal injury protection ("PIP") coverage

---

[1] Also pending are the Plaintiff's motion **(#86)** to amend his complaint to include a prayer for exemplary damages, and the Defendant's motion **(#83)** to exclude testimony of Richard Laugesen. Neither motion has any impact on the cross-motions for summary judgment.

under an insurance policy issued by Allstate to his parents, Douglas[2] and Christine Wobst. He alleges that Allstate's offer of PIP coverage to his parents violated the Colorado Auto Accident Reparations Act ("the No-Fault Act"), § 10-4-710, C.R.S. (repealed in 2003).

Mr. Wobst asserts four claims. Claim 1 alleges that Allstate failed to make an offer of enhanced PIP coverage in compliance with the No-Fault Act, and seeks declaratory relief and reformation of the insurance policy to include such coverage. Claims 2, 3 and 4 are derivative of Claim 1. They assert alternative theories for recovery premised upon Allstate's failure to reform the insurance policy and pay enhanced PIP benefits. In specific, Claim 2 alleges breach of the reformed contract, Claim 3 alleges willful and wanton bad faith, and Claim 4 alleges common law bad faith.

Allstate asserts three counterclaims for fraud, all premised upon the same facts. It alleges that Mr. Wobst procured insurance coverage for his vehicle under his parents' policy by falsely representing that his parents had an ownership interest in the vehicle. Allstate seeks a declaration that the policy is void with respect to the subject vehicle and Mr. Wobst, and seeks to rescind the policy if it is reformed to include enhanced PIP coverage. It does not seek to recover the PIP benefits it already paid to Mr. Wobst.

Both Mr. Wobst and Allstate filed motions for summary judgment. Mr. Wobst moves for summary judgment on Claim 1 (seeking reformation of the policy) and on Allstate's counterclaims for fraud. Allstate moves for summary judgment on all of Mr. Wobst's claims. The issue presented is whether a trial is required on any claim or counterclaim.

---

[2] For purposes of this opinion, Patrick Wobst is referred to as Mr. Wobst. His father is referred to as Douglas Wobst, not as Mr. Wobst.

### III.  Material Facts

The material facts are not in dispute, and are as follows:

1. The Plaintiff, Patrick Wobst, is the son of Douglas and Christine Wobst.

2. At all times pertinent to this action, Douglas and Christine Wobst were the named insureds on an automobile insurance policy issued by Allstate Insurance Company.

3. The policy at issue covered three vehicles, including a 2001 Nissan Altima leased by Mr. Wobst. It also listed three drivers: Mr. Wobst, Douglas Wobst and Christine Wobst.

4. On August 27, 2002, Mr. Wobst was injured in an automobile accident while driving the Altima.

5. Prior to renewal of the insurance policy in the summer of 2002, Allstate prepared several documents which it mailed to Douglas and Christine Wobst: (a) Form X5188-3; (b) Form X67009 ("the Notice Document") bearing the insurance policy number assigned to the Wobsts; and (c) Form PDU17 ("the insurance policy").  According to Linda Sisson, a Senior Field Support Representative for Allstate, the Form X5188-3 and the Notice Document were mailed on or about November 19, 2001, and again on or about May 21, 2002, and the insurance policy was mailed on or about November 18, 1998.

6. Form X5188-3 explains that PIP coverage is for "reasonable and necessary medical expenses, rehabilitation expenses, wage loss, loss of essential services, and death benefits." This document also explains that PIP "insurance, commonly referred to as 'no-fault,' provides coverage for you, your passengers, and pedestrians, who are injured in an automobile accident." It further explains that optional PIP coverages are available.

7. The Notice Document (Form X67009) is entitled "Important Notice - A Reminder

for You." It provides, in pertinent part:

> We want to make sure you know that Allstate offers options to purchase Additional Personal Injury Protection (PIP) benefits on your Allstate auto policy. These additional benefits might be very important to you or occupants of your insured auto if you are involved in a serious injury causing accident. Allstate's Additional (PIP) options provide increased coverages for Medical Expenses, Work Loss and Essential Services. Additional Personal Injury Protection (PIP) may only be purchased when one of the basic PIP coverage options is purchased, and only one additional PIP option may be selected. . . .
>
> The average price associated with purchasing Additional PIP options is around $77. Your Price for Additional PIP coverage will vary based on your characteristics (e.g. driving record, geographic location, age), characteristics of the insured auto (e.g. passive restraint systems, seat belts), and whether you are eligible for certain discounts or subject to certain surcharges. Deductibles or coinsurance selection may also vary the price as well.
>
> There are eight separate coverage options that are available to choose from. Please see your Colorado Automobile Policy for a full explanation of these options. (A description of the eight options can be found under Additional Personal Injury, in the section titled "Limits of Liability.") . . . .

      8.      The insurance policy (Form PDU17) contains several parts. Part 2 specifies the basic personal injury protection coverage (Coverage VA) provided by the policy, and Part 3 specifies additional personal injury protection coverage (Coverage VB) which can be purchased in addition to basic coverage.

      9.      Part 3 also contains a section entitled "Limits of Liability" which outlines eight "Additional Personal Injury Protection options which [the insured] may purchase." Option 1 offers coverage for medical expenses and work loss, and Option 2 offers coverage for medical expenses. Both Options 1 and 2 remove the dollar and time limitations on the benefits which can be paid, but state that coverage is subject to an "aggregate limit for VA and VB stated on the

Policy Declarations."

10.     The policy does not define what constitutes the "aggregate limit for VA and VB stated on the Policy Declarations" and assigns it no particular dollar amount. The Auto Policy Declarations for the subject insurance policy makes no reference to such aggregate amount.

11.     Coverage VA and Coverage VB both provide coverage for an "injured person," but each defines this term differently. For Coverage VA (basic PIP coverage), the term "injured person" means:

> a.  You and any resident relative who sustains bodily injury while in, on, getting into or out of, or getting on or off of, or when struck as a pedestrian by, a motor vehicle.
> b.  Any other person who sustains bodily injury while in, on, getting into or out of, or getting on or off of:
>     i.   Your insured auto . . .
>     iii. A non-owned auto or trailer . . . .

For Coverage VB (enhanced PIP coverage), the term "injured person" means "you or a resident relative who sustains bodily injury while in, on, getting into or out of, or when struck as a pedestrian, by a motor vehicle."

12.     For Coverage VA (basic PIP coverage), the policy does not expressly mention non-relative pedestrians as falling within the meaning of "injured person." For Coverage VB (enhanced PIP coverage), the policy does not expressly mention either pedestrians or non-resident relatives as falling within the meaning of "injured person."

13.     The policy provides that "[w]hen any policy provision is in conflict with the law of the state in which the insured auto is principally garaged, the minimum requirements of the law of the state apply."

14.     June Charron, of Allstate, orally explained the availability of, and offered,

additional PIP coverage to Christine Wobst in person on several occasions. Each time, Ms. Wobst rejected the additional coverage. Ms. Charron stated in her affidavit that it was her practice, using the Alstar computer program, to advise every insured that additional PIP coverage was subject to a maximum aggregate benefit of $200,000.

15.     According to Lawrence Gagnon of Allstate, the Alstar computer program was designed to assist Allstate agents in explaining enhanced PIP coverage options to insureds. The Alstar program contains a screen which explains that there is a $200,000 aggregate per person limit for medical expenses, rehabilitation expenses, work loss benefits, essential service expense benefits, and death benefits.

16.     Christine Wobst testified in her deposition that she did not recall whether she received a written offer of enhanced PIP coverage, or whether anybody from the Allstate office discussed enhanced PIP coverage with her. She testified, however, that it was possible that either occurred.

### IV. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment, which present peculiar problems. The Tenth Circuit has repeatedly directed that cross-motions for summary judgment be determined independently. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d

1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). This is because "determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact[.]" *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).

## V. Analysis

### A. The Plaintiff's Motion

#### 1. Claim 1

Claim 1 seeks a declaration that Allstate failed to make a compliant offer of enhanced PIP coverage under Colorado law as required by § 10-4-710(2)(a), C.R.S. However, in his motion, Mr. Wobst does not contend that there was anything specifically deficient in Allstate's offer of enhanced PIP coverage. Rather, he contends that the policy that was issued did not have the coverages required by law, and therefore the policy must be reformed to bring it into compliance with the No-Fault Act.[3] In specific, he contends that because the policy's basic PIP coverage excluded pedestrians, and because the enhanced PIP provisions did not extend to pedestrians or non-resident relative passengers, the policy violated the No-Fault Act and must be reformed to include unlimited enhanced PIP coverage. In response, Allstate contends that the policy complied with the No-Fault Act because coverage for pedestrians and non-resident relative passengers was

---

[3] Such argument does not align with the asserted claim. Nevertheless, the parties have fully briefed this argument and the Court shall address it.

required by Colorado law, and the policy expressly stated that the minimum requirements of Colorado law would apply. The parties agree that Mr. Wobst bears the burden of proving that the policy did not comply with the No-Fault Act.

This case bears remarkable similarity to the Tenth Circuit's recent decision in *Hill v. Allstate Ins. Co.*, _ F.3d _, 2007 WL 666337 (10th Cir. Mar. 6, 2007). In *Hill*, the insured made precisely the same argument as Mr. Wobst does here – that the insurance policy did not comply with the No-Fault Act because the basic PIP provisions did not explicitly state that they covered pedestrians, and the enhanced PIP description did not explicitly state that it covered either pedestrians or non-resident relative passengers. The Tenth Circuit rejected such argument, and concluded that the No-Fault Act does not require that an insurance policy specifically list the categories of injured persons who are eligible for coverage. It also concluded that because the policy explicitly stated that it would provide benefits as required by Colorado law, that meant that the policy did provide such coverage. It stated: "Reformation of the contract is not required where the claimed violation of the No-Fault Act was the failure to expressly enumerate all the parties eligible to receive PIP benefits, as opposed to the failure to offer those benefits and the subsequent failure to provide coverage." *Id.* at *5. Therefore, Mr. Wobst has not shown that there is a deficiency in the insurance policy which entitles him to reformation of the policy to include enhanced PIP coverage.

### 2. Counterclaims for Fraud

Mr. Wobst moves for summary judgment on Allstate's counterclaims, which he treats as a single counterclaim for fraud. Allstate opposes the motion. Allstate argues, *inter alia*, that if the Court grants its motion for summary judgment on Mr. Wobst's claims, then the Court need not

9

address the fraud counterclaims.  In essence, Allstate concedes that its counterclaims would become moot by such a ruling, because it only sought to rescind the insurance policy if it was reformed to include enhanced PIP coverage.

For the reasons discussed *infra*, Allstate is entitled to summary judgment on Claim 1. Consequently, Mr. Wobst is not entitled to reformation of the insurance policy.  Therefore, the counterclaims are moot, and the Court deems them to be withdrawn.

**B. The Defendant's Motion**

**1. Claim 1**

Claim 1 seeks a declaration that Allstate failed to make a compliant offer of enhanced PIP coverage under Colorado law as required by § 10-4-710(2)(a), C.R.S.  Both parties presume that Allstate bears the burden of proving that the offer it made complied with the statute.[4]

Allstate contends that the offer of enhanced PIP benefits it made to Mr. Wobst's parents complied with the No-Fault Act.[5]  It relies, in particular, upon the documents mailed to Douglas and Christine Wobst, and upon discussions held between Allstate representative June Charron and Christine Wobst.

In his response, Mr. Wobst contends that the offer of enhanced PIP coverage was inadequate because: (1) Form X67009 (the Notice Document) did not offer enhanced PIP benefits

---

[4] Last month, District Judge Edward Nottingham noted in *Warren v. Liberty Mut. Fire Ins. Co.*, 2007 WL 521189 (D. Colo. Feb. 15, 2007), that whether the insured or the insurer bears the burden of proof on this issue presented a matter of first impression within the Tenth Circuit.  He concluded that the burden of proof rests with the insurer.  The Tenth Circuit's more recent decision in *Hill* is silent as to which party bears the burden of proof.  This Court defers to the parties' joint presumption.

[5] It also argues that Mr. Wobst lacks standing to argue that the policy did not cover pedestrians and non-resident relatives.  For the reasons addressed by the Tenth Circuit in *Hill*, 2007 WL 666337 at *4 n.5, the Court rejects this argument.

which were unlimited in time and amount; (2) the insurance policy referenced in Form X67009 failed to provide coverage for pedestrians and non-resident relatives; and (3) the options for enhanced PIP coverage in the insurance policy were subject to a cap of an indeterminate amount, namely, the "aggregate limit for VA and VB stated on the Policy Declarations", without specific reference to a $200,000 cap.[6]

> Pursuant to § 10-4-710(2), C.R.S. (repealed 2003),
>
>> (a) Every insurer shall offer the following enhanced benefits for inclusion in a complying policy, in addition to the basic coverages described in section 10-4-706, at the option of the named insured:
>>
>>> (I) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitation; or
>>>
>>> (II) Compensation of all expenses of the type described in section 10-4-706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations. . .
>>
>> (b) A complying policy may provide that all benefits set forth in section 10-4-706(1)(b) to (1)(e) and in this section are subject to an aggregate limit of two hundred thousand dollars payable on account of injury to or death of any one person as a result of any one accident arising out of the use or operation of a motor vehicle.

The expenses described in § 10-4-706(1)(b), C.R.S., are medical expenses of varying types. Under § 10-4-707, the coverages described in § 10-4-706, C.R.S., "shall be applicable to" injuries sustained by a named insured, by a resident relative of the named insured, by any other occupant

---

[6] These arguments are distinct from the arguments which Mr. Wobst made in his motion.

11

of the insured's vehicle, or by a pedestrian injured by the insured's vehicle. *See Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 553 (Colo. App. 1998).

For an offer of enhanced PIP coverage to comply with the No-Fault Act, it must be reasonably calculated to permit an insured to make an informed decision about whether to purchase additional coverage. *See Hill*, 2007 WL 666337 at *5. To determine whether an offer of enhanced PIP coverage meets this standard, the Court considers the totality of the circumstances, including a variety of factors outlined by the Colorado Supreme Court in *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 913 (Colo. 1992):[7] (1) whether the insurer clearly explained the purpose of the additional coverage to the insured; (2) whether the explanation was oral or written; (3) whether the insured was informed of the specific differences between various options; (4) whether the insured was informed of the price of additional coverage; and (5) any other circumstances which reflect upon whether the insured received an adequate offer.

Here, Allstate offered enhanced PIP coverage to the Wobsts both in writing and orally. The written offer consisted of the Notice Document and the insurance policy. Options 1 and 2 for enhanced PIP coverage outlined in the policy removed the time or dollar limitation on benefits, but were subject to an "aggregate limit for VA and VB stated on the Policy Declarations." An aggregate limit of $200,000 was permitted by § 10-4-710(2)(b), C.R.S. The policy did not expressly refer to such dollar figure, but consistent with her standard practice, and using the Alstar computer program, June Charron of Allstate explained to all insureds (such as Christine Wobst) that there was a $200,000 per person cap on enhanced PIP benefits. After Ms. Charron

---

[7] In *Hill*, the Tenth Circuit did not resolve whether the *Parfrey* factors should be applied, and instead looked both at the totality of the cirumstances, and at the *Parfrey* factors. This Court does the same.

offered enhanced PIP coverage to Ms. Wobst, she declined to purchase such coverage.

These facts are eerily similar to those in *Hill*. In *Hill*, there was a face-to-face meeting between the insured and the insurance agent, who explained various coverages using her computer screen. The insured in *Hill* was provided the exact same policy and Notice Document as Douglas and Christine Wobst, and was provided the same advisement in Form X5188 as were the Wobsts in Form X5188-3. In light of such facts, the Tenth Circuit stated that "it is impossible to conclude that" the insureds "were unable to make a reasonably informed decision not to purchase the extended PIP coverage." *Hill*, 2007 WL 666337 at *7. Faced with virtually identical, undisputed facts, and construing such facts in the light most favorable to Mr. Wobst, the Court likewise cannot conclude that the Wobsts were unable to make a reasonably informed decision not to purchase enhanced PIP coverage.

Thus, Allstate has shown that its offer of enhanced PIP coverage complied with the No-Fault Act. Patrick Wobst has not demonstrated any triable issue of fact on this claim. Accordingly, Allstate is entitled to summary judgment on Claim 1.

### 2. Claims 2, 3 and 4

Claims 2, 3 and 4 are derivative of Claim 1. All are premised upon a reformed insurance policy. Because Mr. Wobst is not entitled to reformation of the insurance policy, the Court is compelled to dismiss Claims 2, 3 and 4.

**IT IS THEREFORE ORDERED** that:

(1)   Patrick Wobst's motion for summary judgment **(#62)** is **DENIED**.

(2)   Allstate's motion for summary judgment **(#65)** is **GRANTED**. Judgment shall enter in favor of Allstate on Claim 1. Claims 2, 3 and 4 are dismissed.

(3) The Clerk of Court is directed to close this case.

Dated this 16th day of March, 2007

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge